UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL K. TEAL,

    Plaintiff,

-vs-                                                  Case No. 8:11-cv-164-T-27TGW

JAMES CAMPBELL, et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** are Defendants' Motion to Dismiss, or in the Alternative to Quash Returns of Service as to All Defendants and Requiring U.S. Marshal to Send Waivers of Service Pursuant to Fed. R. Civ. P. 4(D) and this Court's September 20, 2011, Order (Dkt. 16); Amended Motion to Dismiss or in the Alternative to Quash Returns of Service as to All Defendants and Requiring U.S. Marshal to Send Notices of a Lawsuit and Waivers of Service Pursuant to Fed. R. Civ. P. 4(D) and this Court's September 20, 2011, Order (Dkt. 17); Motion to Dismiss Complaint on Behalf of Defendants Campbell and Felicetta and Memorandum of Law (Dkt. 18); Motion to Dismiss Complaint on Behalf of Defendant Carter and Memorandum of Law (Dkt. 19); Defendant Sheriff's Motion to Dismiss and Memorandum of Law in Support Thereof (Dkt. 20); Motion to Dismiss Complaint on Behalf of Defendants Schein and Hughey and Memorandum of Law (Dkt. 21); and "Plaintiff's Response to Defendants [sic] Attorney, Amended Motion to Dismiss or in Alternative to Quash, Return of Service, as to all Defendants Requiring, U.S. Marshall [sic] to Send Notices of a Lawsuit and, Waiver of Service Pursuant to Fed. R. Civ. P. 4(d), Dated September 20, 2011, Order, (Document 16 & Document 17)" (Dkt. 29).

## I. Motions to Dismiss and Quash Service of Process (Dkts. 16, 17)

Initially, as the motion to dismiss or quash service of process was amended to indicate that Defendants Campbell and Felicetta had subsequently received personal service, the motion at Dkt. 16 will be denied as moot.

In the amended motion to dismiss or quash service of process, Defendants move the Court to either dismiss this case for insufficient service of process, or in the alternative quash the returns of service at Dkts. 9, 10, 11, 12, 13, 14, and 15. Defendants also request the Court order Plaintiff and the U.S. Marshal to send Defendants Notice of Lawsuit and Request to Waive Service of Summons forms, and Waiver of Service of Summons forms.

Defendants assert that they were not personally served with process on November 8, 2011. Instead, they claim that on that date, the Sheriff's Department received, via certified mail, a package which contained summons, copies of the complaint, and returns of service for each Defendant. A Sheriff's employee, Cesar Tolentino, signed the certified mail receipt. Thereafter, the U.S. Marshal apparently took Mr. Tolentino's name, placed his name on the process receipts and returns, and filed the returns with the Court (see Dkts. 9, 10, 11, 12, 13, 14, 15).

Federal Rules of Civil Procedure, Rule 4(e) reads in pertinent part:

[u]nless Federal law provides otherwise, an individual-other than a minor, an incompetent person, or a person whose waiver has been filed may be served in a judicial district of the United States by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

2

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Defendants assert that Mr. Tolentino is not authorized to accept service of process on their behalf. Moreover, Florida law allows service on an individual "by delivering a copy of [the summons and complaint] to the person to be served. . .or by leaving the copies at [a Defendant's] *usual place of abode* with any person residing therein who is 15 years of age or older and informing the person of their contents." Fla. Stat. § 48.031(1)(a) (emphasis added). The summons and complaint were allegedly received by Mr. Tolentino, an unauthorized agent, via certified mail at Defendants' place of employment. Therefore, the November 8, 2011 service upon Defendants did not comply with either the Federal Rules or Florida law.

Nevertheless, "[u]pon a showing of insufficient service of process, Fed. R. Civ. P. 12(b)(5) provides district courts with the authority to either dismiss the complaint or to quash the service and require the plaintiff to re-attempt service of process." *Miller v. Bd. of Educ.*, 2006 U.S. Dist. LEXIS 76238, *5 (D.N.M. Jan. 18, 2006) (citation omitted). *See also S.J. v. Issaquah Sch. Dist. No. 411*, 470 F3d 1288, 1293 (9th Cir 2006) (under 12(b)(5), when service of process is insufficient, district court has discretion either to dismiss the action without prejudice or to quash service). "[W]hen there is no prejudice and service can be accomplished, courts generally will quash the insufficient service and allow the plaintiff to perfect service." *Geer v. McGregor*, 2011 U.S. Dist. LEXIS 130718, *9 (D.S.C. Oct. 18, 2011) (citing *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992); *Pell v. Azar Nut Co., Inc.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983)).

Defendants have not demonstrated that they will be prejudiced if the Court quashes the

3

returns of service instead of dismissing the complaint. Moreover, the Sheriff and Defendants Schein, Hughey, Carter, Campbell, and Felicetta now have received personal service, and have filed motions to dismiss the complaint (see Dkts. 18-21). Therefore, although the November 8, 2011 service was deficient, the Court will deny the motion to dismiss pursuant to 12(b)(5), and instead exercise its discretion to quash the returns of service.

**II. Motions to Dismiss (Dkts. 18, 19, 20, 21)**

**1. Motion to dismiss standard**

Federal Rules of Civil Procedure, Rule 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). On the contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**2. Discussion**

**a. Defendant Gualtieri's Motion to Dismiss (Dkt. 20)[1]**

Pursuant to Fed. R. Civ. P. 12(b)(6), the Sheriff moves to dismiss Plaintiff's complaint for failure to state a cause of action under 42 U.S.C. § 1983. The Sheriff also moves to dismiss Plaintiff's claims for compensatory and punitive damages under 42 U.S.C. § 1997e(e) of the Prison

---

[1] Sheriff Gualtieri succeeded Sheriff Coats on November 8, 2011 (Dkt. 20 at 1).

Litigation Reform Act on the ground that the complaint fails to allege that Plaintiff sustained more than *de minimis* injury as the result of Defendants' actions.

In the complaint, the only allegation against the Sheriff is "James Coats to whom all these sherriffs [sic] was [sic] employed by at the time of the incident, if he had trained and monitored his staff, and not allowed them to be racially motivated and without the proper supervision, and racial, being that this incident was racially motivated, in the most racial section of St. Pete., and I had 2 white girls that was in the truck." (Dkt. 1 at docket page 7). The Sheriff argues that this claim is insufficient under Fed. R. Civ. P. 12(b)(6).

The Sheriff is correct that Plaintiff cannot rely upon a theory of respondeat superior to hold him liable for the deputies' conduct under section 1983. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Therefore, in order to impose liability against the Sheriff, Plaintiff must allege that: (1) his constitutional rights were violated; (2) the Sheriff had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation. *Id.* The Sheriff argues, in part, that Plaintiff's allegations do not establish the second element. The Court agrees that the allegations are insufficient to state a claim with respect to the second element.

Plaintiff does not allege that the Sheriff had a custom or policy that constituted deliberate indifference to Plaintiff's constitutional rights. Nevertheless, the second element of deliberate indifference can be shown, in the absence of a specific custom or policy, where the likelihood for constitutional violation is so high that the need for training is obvious based on the duties assigned to specific officers. *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989). The Eleventh Circuit noted in *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998):

>To establish a "deliberate or conscious choice" or such "deliberate indifference," a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action. *See Board of the County Comm'rs v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 1390-91, 137 L. Ed. 2d 626 (1997); *Young v. City of Augusta, Georgia*, 59 F.3d 1160, 1171-72 (11th Cir. 1995); *Church v. City of Huntsville*, 30 F.3d 1332, 1342-46 (11th Cir. 1994); *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990); *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1556-57 (11th Cir. 1989). This Court repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise. For example, in *Wright v. Sheppard*, 919 F.2d 665 (11th Cir. 1990), this Court held that a sheriff's department was not liable for a deputy's acts when "no evidence of a history of widespread prior abuse ... put the sheriff on notice of the need for improved training or supervision." *Id.* at 674. Indeed, in *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994), this Court reversed a district court's preliminary injunction against the City of Huntsville, holding that the plaintiffs were not likely to succeed on the merits of their failure-to-train claim without proof that the City was aware of a prior incident in which constitutional rights were similarly violated. *Id.* at 1342-46. *See also Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir. 1990) (finding no liability for failure to train when no pattern of incidents put the City on notice of a need to train). More importantly, in *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987), even though there had been ten citizen complaints about police officer Scheib, this Court held that the City did not have any notice of past police misconduct because the plaintiff "never demonstrated that past complaints of police misconduct had any merit." *Id.* at 1193. This Court aptly noted, "Indeed, the number of complaints bears no relation to their validity." *Id.*

Here, the complaint fails to allege specific facts related to an obvious need for training the deputies with respect to racism. For example, there are no allegations of prior incidents of deputies using unreasonable or excessive force during an arrest on account of racism. There are also no allegations demonstrating that the likelihood for a constitutional violation was so high that the need for training would have been obvious. *See Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009).

The only remaining option for alleging the necessary custom or policy is to allege that the Sheriff ratified the deputies' conduct. Ratification occurs when the Sheriff had an opportunity to

6

review the deputies' conduct and agrees with their conduct. *See Garvie v. City of Ft. Walton Beach*, 366 F.3d 1186, 1189-90 (11th Cir. 2004). The complaint does not allege that the Sheriff had an opportunity to review the deputies' conduct and agreed with it.

In sum, the allegations with respect to the second element of establishing a custom or policy are too conclusory to meet the standard to state a claim under *Iqbal*. Accordingly, the Sheriff's motion to dismiss with respect to the claim that the Sheriff failed to train or supervise the Deputies is granted without prejudice to Plaintiff to amend this claim to allege sufficient factual allegations.

With regards to the Sheriff's motion to dismiss Plaintiff's claim for compensatory and punitive damages, § 1997e(e) states "Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit Court of Appeals has determined that "'custody' should be interpreted in light of its common definition. Accordingly, we find that the PLRA should apply to prisoner lawsuits that claim injuries suffered during custodial episodes, even if such custody occurred outside prison walls." *Napier v. Preslicka*, 314 F.3d 528, 533 (11th Cir. 2002). Because Plaintiff claims he suffered injury during an arrest, he was in "custody," and § 1997e(e) applies to his claim. *Id.*

In *Harris v. Garner*, 190 F.3d 1279 (11th Cir. 1999), *vacated in part by* 216 F.3d 970 (11th Cir. 2000), the Eleventh Circuit held that "in order to satisfy section 1997e(e) the physical injury must be more than *de minimis*, but need not be significant." *Id.* at 1286 (citing *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir.1999)). The complaint alleges that the Deputies beat, stomped on, tasered, and kicked Plaintiff, including in his upper body and face, while he was on the ground hurt from hitting his knee on a car's fender. Tasers had to be surgically removed from his lips at the

7

hospital. The five or six Deputies beating and kicking Plaintiff, including his face, is sufficient to demonstrate more than a *de minimis* physical injury. *See, e.g., Sanders v. Day*, 2008 U.S. Dist. LEXIS 21713, *4 (M.D. Ga. Mar. 19, 2008) ("The allegations of kicking and using pepper spray on a handcuffed suspect are sufficient to demonstrate more than a *de minimis* physical injury."). Moreover, "[a]lthough being struck by a taser gun is an unpleasant experience" *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004), it does not necessarily result in more than a *de minimis* injury. *See, e.g., Lacross v. City of Duluth*, 2012 U.S. Dist. LEXIS 66681, *36-37 (D. Minn. May 14, 2012) ("The use of the Taser, in and of itself, is not more than *de minimis* injury.") (citing *Cook v. City of Bella Villa*, 582 F.3d 840, 850 (8th Cir. 2009) (citing *Draper*, 369 F.3d at 1278)). Nevertheless, this Court concludes that the allegations of being tasered 3 or 4 times, and having a taser surgically removed from Plaintiff's lips, are sufficient to demonstrate more than a *de minimis* injury. *Cf. Wilson v. TASER Int'l, Inc.*, 303 Fed. Appx. 708, 710 (11th Cir. 2008) (unpublished) (officer who volunteered to be shocked by taser described the pain following this exposure as "unbelievable"); *Orem v. Rephann*, 523 F.3d 442, 450 (4th Cir.2008) (Shedd, J., concurring) ("[T]he pain associated with being shocked twice by a taser in sensitive body areas. . .seems to me to fall within the level that we have recognized constitutes more than *de minimis* injury regardless of whether Ms. Orem has any enduring injury."). Accordingly, the motion to dismiss Plaintiff's claim for compensatory and punitive damages is denied.

**b. Defendants Campbell, Felicetta, Hughey, and Schein's Motions to Dismiss (Dkts. 18, 21).**

Defendants Campbell, Felicetta, Hughey, and Schein move to dismiss the complaint on the ground that it fails to state facts that demonstrate a plausible claim that they violated Plaintiff's constitutional rights. Further, they assert that they are entitled to qualified immunity.

Plaintiff's complaint alleges that these Defendants violated Plaintiff's Fourth Amendment right to be free from excessive force during an arrest.[2] The complaint alleges that on January 20, 2007, at 3:30 a.m., Plaintiff was in a vehicle with two females when they approached a DUI checkpoint. One of the females was driving, and she did not stop at the checkpoint. Plaintiff did not want to be part of the driver's attempt to allude the police. Therefore, when the vehicle came to a stop, he jumped out of the vehicle. He struck the front fender of a vehicle, injuring his leg and back. While he was on the ground, Deputies Riba, Schein, Campbell, Felicetta, Carter, and Hughey beat and kicked him.[3] All the deputies, with the exception of Riba, deployed their tasers on Plaintiff while he was on the ground. At least one of the tasers struck Plaintiff in the face, and had to be surgically removed from his lips while he was at the hospital.

"An officer's use of force is excessive under the Fourth Amendment if the use of force was objectively [un]reasonable in light of the facts and circumstances confronting the officer." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2001) (internal quotation marks and citation omitted) (alteration in original). In determining the objective reasonableness of the use of force, the court should look at "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to flee." *MacMillan v. Roddenberry*, 432 F. App'x 890, 895 (11th Cir. 2011) (unpublished opinion).

---

[2] "The use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002).

[3] Plaintiff describes the alleged excessive use of force as a "Rodney King" type beating. Thus, Plaintiff references the well-publicized conduct of Los Angeles police striking an arrestee, Rodney King, with their police batons. *See Koon v. United States*, 518 U.S. 81 (1996).

Accepting all the factual allegations contained in the complaint as true, and viewing them in the light most favorable to Plaintiff, the Deputies' use of force was objectively unreasonable. A crime was committed when the vehicle in which Plaintiff was a passenger failed to stop at the DUI checkpoint. See Section 316.193, Fla. Stat. (2007) ("It is unlawful for the operator of any vehicle, having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such order. . . .and a person who violates this subsection commits a felony of the third degree. . ."). Moreover, the failure to stop the vehicle at the checkpoint was an attempt to flee, and imposed some degree of threat to the safety of the Deputies and others. Therefore, the deputies clearly were entitled to use some degree of force to apprehend Plaintiff. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (the right to arrest entails the right to use some degree of force).

Nevertheless, the facts as alleged indicate that no violent crime was committed, and Plaintiff was lying on the ground injured and not running from or otherwise resisting the Deputies, when they deployed their tasers on Plaintiff and began kicking, stomping, and beating him. Therefore, at this stage of the proceedings, the Court finds that the Deputies' actions constituted excessive force under the Fourth Amendment.[4]

With respect to Defendants' argument that they are entitled to qualified immunity, qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does

---

[4] The Court disagrees with the Deputies' argument that "the utter lack of well-plead facts as to the specific actions of each Defendant Deputy. . .is fatal to his Complaint." (Dkt. 18 at 5). Under the circumstances surrounding Plaintiff's arrest, he is not required to plead the specific conduct of each individual deputy during the alleged beating. *See Clark v. City of Chicago*, 2010 U.S. Dist. LEXIS 121685, *10 (N.D. Ill. Nov. 17, 2010) ("Since Plaintiffs contend that they were beaten severely by multiple Defendants, at [the motion to dismiss stage], it is not reasonable to expect Plaintiffs to be able to provide a detailed, blow-by-blow recitation of who did what and when."). The complaint alleges sufficient details regarding the alleged use of excessive force to provide the individual Defendants with adequate notice of the claims being brought against them.

not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Crenshaw v. Lister*, 556 F.3d 1283, 1289 (11th Cir. 2009) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "To receive qualified immunity, the officer must first show that he acted within his discretionary authority." *Lewis v. City of W. Palm Beach Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009).

It is undisputed that the Deputies were acting within the scope of their discretionary authority when apprehending Plaintiff. The burden therefore shifts to Plaintiff to show that qualified immunity is not appropriate. *See id.* A qualified immunity analysis involves a two-part inquiry. First, do the facts establish a violation of a constitutional right? *Pearson*, 129 S. Ct. at 815-16. Second, was the right "clearly established" at the time the alleged wrong occurred? *Id.* at 816.

As discussed above, taking the facts alleged in the complaint as true, the Deputies' actions constituted excessive force in violation of the Fourth Amendment. Further, qualified immunity is not available to the Deputies because Plaintiff's right to be free from excessive force was clearly established before January 20, 2007. *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006) ("It is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment."). *See also Dobbins v. Giles*, 451 Fed. Appx. 849, 851 (11th Cir. 2012) (unpublished opinion) ("[W]hen a plaintiff making an excessive force claim 'has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment' demonstrating that the

officer used force maliciously and sadistically to cause harm, he has necessarily established the two prongs required to defeat a defense of qualified immunity.") (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)). Therefore, the Court denies the Deputies' request for qualified immunity at this stage of the proceedings.

Accordingly, Defendants Campbell, Felicetta, Hughey, and Schein's motions to dismiss will be denied.[5]

### c. Defendant Carter's Motion to Dismiss (Dkt. 19).

Defendant Carter also moves to dismiss the complaint on the ground that it fails to state facts that demonstrate a plausible claim that he violated Plaintiff's constitutional rights. He further asserts that he is entitled to qualified immunity. Finally, he moves to dismiss Plaintiff's claim for compensatory and punitive damages pursuant to 42 U.S.C. § 1997e(e).

With regard to Carter's arguments that he is entitled to qualified immunity, and that the claim for compensatory and punitive damages must be dismissed, the arguments will be denied for the same reasons discussed above in denying Defendants Campbell, Felicetta, Hughey, and Schein's motion to dismiss the claim for compensatory and punitive damages, and request for qualified immunity.

With respect to Carter's argument that the complaint fails to state a claim upon which relief can be granted against him, the motion will be granted because the allegations against Carter are confusing and unclear. Page 9 of the complaint alleges that Carter participated in beating and tasering Plaintiff (Dkt. 1 at docket page 16). The sixth page of the complaint, however, identifies

---

[5]The motion to dismiss Plaintiff's claim for compensatory and punitive damages is denied for the same reasons discussed in denying Defendant Gualtieri's motion to dismiss the claim for compensatory and punitive damages.

Campbell, Felicetta, Hughey, Riba, and Schein as the deputies participating in the alleged use of excessive force, and makes no mention of Carter participating in the use of force (Id. at docket page 6). Moreover, in the "Relief Requested" section of the complaint, Plaintiff demands damages only from Campbell, Felicetta, Hughey, and Schein for the alleged "beating and wrongful tasering." (Id. at docket page 18). He does not demand damages from Carter for the alleged use of excessive force (Id.). Therefore, this Court finds that the allegations of the complaint are insufficient to put Carter on notice of the claims against him. *See Bailey v. Janssen Pharmaceutica, Inc.*, 288 Fed. App'x. 597, 603 (11th Cir. 2008) (unpublished opinion) (in order to be "minimally sufficient," a complaint must put the defendant "on notice of the claims against him"). Accordingly, Carter's motion to dismiss the use of excessive force claim against him is granted without prejudice to Plaintiff to amend this claim to allege sufficient factual allegations.

### d. "Failure to testify" claim against Carter and Riba

The complaint alleges that Carter and Riba violated Plaintiff's constitutional rights, apparently when they failed to "step up" and testify at Plaintiff's criminal trial as to "the truth of this matter." (Dkt. 1 at docket pages 17-18). "A criminal defendant has a 'fundamental constitutional right to testify *in his or her own behalf* at trial...'" *Jones v. Sec'y*, 2012 U.S. App. LEXIS 17949, *10 (11th Cir. Aug. 24, 2012) (unpublished opinion) (quoting *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc)) (emphasis added). It would not have been Carter or Riba's decision whether or not to testify. Rather, it is the prosecutor's duty to decide which witnesses to call at trial. *Cf. Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976). Accordingly, Plaintiff fails to state a claim upon which relief can be granted.

## Leave to Amend

Within thirty (30) days from the date of this Order, Plaintiff shall submit an amended complaint to cure the deficiencies outlined above. The Clerk of Court will mail Plaintiff a court-approved form to use for filing a first amended complaint. If Plaintiff fails to use the court-approved form, the Court may strike the amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "Amended Complaint." The amended complaint must be retyped or rewritten **in its entirety on the court-approved form and may not incorporate any part of the original complaint by reference. Plaintiff is cautioned that the amended complaint supersedes the original complaint, and all claims must be raised in the amended complaint.**

Plaintiff must limit the allegations in his amended complaint to claims related to the claims asserted in the original complaint, and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place Defendants' names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Defendants" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates of, and facts regarding, the alleged illegal acts. In the section entitled "Statement of Claims," Plaintiff must state what rights or statutes he contends have been violated, and he must provide reference to the facts supporting the claimed violations. Finally, in the "Relief Requested" section, Plaintiff shall identify the form of relief he seeks from this Court.

Accordingly, the Court **ORDERS** that:

1. Defendants' Motion to Dismiss, or in the Alternative to Quash Returns of Service as to All Defendants and Requiring U.S. Marshal to Send Waivers of Service Pursuant to Fed. R. Civ. P. 4(D) and this Court's September 20, 2011, Order (Dkt. 16) is **DENIED** as moot.

2. Defendants' Amended Motion to Dismiss or in the Alternative to Quash Returns of Service as to All Defendants and Requiring U.S. Marshal to Send Notices of a Lawsuit and Waivers of Service Pursuant to Fed. R. Civ. P. 4(D) and this Court's September 20, 2011, Order (Dkt. 17) is **GRANTED** solely to the extent that the service of process purportedly served on November 8, 2011 (Dkts. 9, 10, 11, 12, 13, 14, 15), is hereby **QUASHED**. The amended motion is otherwise **DENIED**.

3. Defendants Campbell, Felicetta, Hughey, and Schein's Motions to Dismiss (Dkts. 18, 21) are **DENIED**.

4. Defendant Gualtieri's Motion to Dismiss (Dkt. 20) is **GRANTED** in part, and **DENIED** in part. The motion to dismiss Plaintiff's claim that the Sheriff's failure to train and supervise his staff caused the constitutional violations is **GRANTED** without prejudice to Plaintiff to amend this claim to allege sufficient factual allegations. The motion is otherwise **DENIED**.

5. Defendant Carter's Motion to Dismiss (Dkt. 19) is **GRANTED** in part, and **DENIED** in part. The motion to dismiss Plaintiff's claim that Carter used excessive force during the course of the arrest is **GRANTED** without prejudice to Plaintiff to amend this claim to allege sufficient factual allegations. The motion is otherwise **DENIED**.

6. Plaintiff's claim that Defendants Carter and Riba violated his constitutional rights by failing to testify at his criminal trial is **DISMISSED** with prejudice (the amended complaint may not allege this claim).

7.  The **Clerk of Court** is directed to mail with Plaintiff's copy of this Order a court-approved form for filing a civil rights complaint. This case number should be written on the form.

8.  Plaintiff has thirty (30) days from the date of this Order to file an amended complaint, submitted on the court form, in compliance with this Order. Failure to comply with this Order within the allotted time **shall** result in the **dismissal** of this action **without further notice.**[6]

9.  Upon the filing of Plaintiff's amended complaint, all Defendants upon whom service has been effected (and who are named in the amended complaint) shall have 14 days to answer or otherwise respond.

**DONE AND ORDERED** in Tampa, Florida, on September 26th 2012.

_____
JAMES D. WHITTEMORE
United States District Judge

SA: sfc
Copy to: *Pro Se* Plaintiff
    Counsel of Record

---

[6] Plaintiff is cautioned that if he fails to timely file his amended complaint and this case is dismissed, any subsequently-filed complaint in this Court challenging the January 20, 2007 use of force, may be barred by the applicable statute of limitation.